**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**CHICAGO BLACKHAWK HOCKEY
TEAM, INC., Defendant-Appellant.**

**No. 7-1.**

Temporary Emergency Court of Appeals.

Oct. 24, 1972.

Rehearing Denied Nov. 21, 1972.

Joseph DiStefano, Washington, D. C. (Harlington Wood, Jr., Washington, D. C., James R. Thompson, Robert B. Schaefer, Chicago, Ill., and William E. Nelson, Washington, D. C., on the brief), for plaintiff-appellee.

Sidney Z. Karasik, Chicago, Ill. (Arthur Morse and Seymour Schriar, Chicago, Ill., on the brief), for defendant-appellant.

Before TAMM, Chief Judge, and VAN OOSTERHOUT and HASTINGS, Judges.

VAN OOSTERHOUT, Judge.

Defendant Chicago Blackhawk Hockey Team, Inc. (Blackhawk), has taken timely appeal from final judgment of the District Court entered June 22, 1972, granting a permanent injunction restraining Blackhawk from selling programs at its regular season home games at a price in excess of 50 cents per program except to the extent permitted by applicable regulations, and entering judgment assessing civil penalties for past violations aggregating $18,900. Jurisdiction of this court is established by the Economic Stabilization Act of 1970 as amended.

Blackhawk in its appeal raises two grounds for reversal: (1) That it is exempt from price controls as a business with less than 60 employees under Cost of Living Council regulation § 101.51, 37 Fed.Reg. 8940 (May 3, 1972), as amended, 37 Fed.Reg. 9457 (May 11, 1972). (2) That even if not exempt, defendant is innocent of any price violation because it sold programs during the base period at prices equal to or higher than the contested subsequent price, and the Government has failed to prove any violation.

We find for reasons hereinafter stated that there is no substantial evidence to support a finding that Blackhawk violated the price freeze regulations and hence do not reach the exemption issue.[1]

---

1. We note that the record on the exemption issue is unsatisfactory. The trial court denied Blackhawk leave to amend its pleading to assert a small business exemption defense which it attempted to raise a few days after the enactment of

The trial court, after determining it had jurisdiction, that Blackhawk is subject to the provisions of the Economic Stabilization Act as amended and the regulations promulgated thereunder, and that Blackhawk sells programs at its home hockey games, makes the following findings:

"4. During the 1970–71 regular season (October 11, 1970 through April 4, 1971) Blackhawk charged a price of $0.50 per program book, which price constituted the base price.

5. During the period August 15, 1971 to November 13, 1971, the defendant charged a price of $0.75 per program book at six (6) of its regular season home games, for a product substantially identical to the program book sold at a price of $0.50 during the period October 11, 1970 to April 4, 1971. [Phase I].

6. During the period November 13, 1971 through January 27, 1972, the defendant charged a price of $0.75 per program at nineteen (19) of its regular season home games, for a product substantially identical to the program book sold at a price of $0.50 during the period of October 11, 1970 through April 4, 1971. [Phase II].

7. The defendant sold programs at a price of $0.75 at nine (9) regular season home games since the December 22, 1971 amendments to the Economic Stabilization Act of 1970.

8. The defendant's price increase was not based on an increase in the cost of the program book and therefore constituted an increase in the customary initial percentage markup."

Based upon such findings, the trial court determined that the violation set out in finding 5 violated Phase I and those set out in finding 6 violated Phase II of the Economic Stabilization Act and the regulations promulgated thereunder. Injunctive relief was granted as heretofore set out, and penalties aggregating $18,900 were assessed ($2,100 on each of the nine violations set out in finding 7) pursuant to the Economic Stabilization Act of 1970 as amended December 22, 1971, Pub.L. 92–210.

All of the court's findings are supported by substantial evidence which is largely undisputed. The court's findings and conclusions do not resolve the critical issue in this case, to wit, whether the price at which programs are sold by the same vendor at post-season play-off games played in the same stadium are entitled to consideration in determining the base price.

Blackhawk is a member of the National Hockey League and plays a regular schedule of games in the western division in which it placed first in the 1970–71 season. Its last scheduled game was played on April 4, 1971. Shortly thereafter the record reflects that Blackhawk participated in an undisclosed number of play-off games at its home stadium. The undisputed evidence is that it sold programs at such games at $1.00 each. The court in its findings gave no consideration to the price received by Blackhawk at the post-season games nor did it state why such fact should not be considered.

We look to the regulation for aid in determining whether the price charged for programs at the play-off games is entitled to consideration in determining the base freeze price.

Violations of Phase I and Phase II regulations are charged by the Government. Some variance exists in the regulations applicable to Phase I and Phase II but such differences have no material bearing on the result reached. The penalties are based on Phase II violations.

the small business exemption. Some evidence was received as to the number of employees of Blackhawk and its subsidiary farm club. There is indefinite evidence that Blackhawk might possibly be controlled by Consolidated Enterprises, Inc. The trial court made no express finding or determination on the exemption issue. If the exemption issue controls the decision, a remand of such issue to the trial court for further proceedings and findings would be required.

In order to avoid unduly extending this opinion, we will set out principally the regulations adopted by the Cost of Living Council governing Phase II obligations which apply to the price increase of commodities sold after November 18, 1971, the expiration date of Phase I. The general rule stated in Price Commission regulation § 300.11, 6 CFR § 300.11 (1972), reads:

"(a) No person may charge a price with respect to any sale or lease of an item of property or a service after November 13, 1971, which exceeds the base price (or other price authorized under this part) for that item of property or that service."

Pertinent definitions found in § 300.5 include:

" 'Freeze base period' means either—

(a) The period beginning on July 16, 1971, and ending on August 14, 1971; or

(b) For a person who had no transactions during the period stated in paragraph (a) of this section, the nearest preceding 30-day period in which he had a transaction."

" 'Highest price in a substantial number of transactions' means the highest price at or above which at least 10 percent of the units were priced in transactions with any class of purchasers."

" 'Class of purchasers' means purchasers to whom a person has charged a comparable price for comparable property or service during the freeze base period pursuant to customary price differentials between those purchasers and other purchasers."

" 'Customary price differential' includes a price distinction based on a discount, allowance, add-on, premium, and an extra based on a difference in volume, grade, quality, or location or type of purchaser, or a term or condition of sale or delivery."

Section 300.405 (Subpart F—Base Price) reads:

"(a) *Sales.* The base price with respect to a sale of personal property or services is the highest price specified by the seller in contracts with a specific class of purchasers in a substantial number of transactions involving that personal property or services during the freeze base period. . . ."

The validity of the regulations is not challenged. The problem presented is the interpretation of the regulations which have been adopted. The programs Blackhawk sold at both the regular season games and at the play-off games are a commodity, not a service. Hence, we do not have directly before us the issue whether services performed at play-off games differ from services performed at regular games. The sale of programs is governed by the rules applicable to the sale of commodities. The same rule applies whether the commodity is a program, or peanuts or hot dogs.

Programs sold at regular and play-off games are in evidence and all of such programs are substantially the same. The Government has not pointed to any material difference in the programs and we find no substantial difference.

The programs for home games and play-off games upon the record before us are sold by Blackhawk, the same vendor with the same economic interest, and at the same location.

No games were played and hence no programs were sold during the primary freeze base period occurring from July 16 to August 14, 1971. Under the applicable regulations, the base freeze period becomes the nearest preceding thirty-day period in which a transaction occurred. The last home game was played on April 4, 1971, with the play-off games following shortly thereafter on dates not specified. It is not seriously disputed that the programs sold at the play-off games met the requirement of the regulation that "at least 10 percent of those units" were priced by the seller in transactions with that class of purchasers during the freeze base period.

Under the "class of purchasers" definition, we are satisfied that the class of purchasers of programs for scheduled games and play-off games is the same. In any event, the evidence does not support a contrary conclusion. In all instances the programs are purchased by spectators attending the game in Blackhawk's stadium. Sales are all made at retail in small quantities to individual purchasers for cash. No "customary price differential" as defined by the regulations exists. No price distinction is made between the program purchasers at home games and play-off games "based on discount, allowance, add-on or premium and an extra based on difference in volume, grade, quality, or location or type of purchaser, or a term or condition of sale or delivery."

The trial court made no finding on the class-of-purchasers issue. The Government in support of its contention that a different class of purchasers is established relies on Price Commission ruling of February 25, 1972, 37 Fed.Reg. 3997, reading:

"For purposes of determining the base price for sales of personal property § 300.405, Economic Stabilization Regulations, 6 C.F.R. 300.405, 36 F.R. 23974 (Dec. 16, 1971), indicates the base price will be determined by sales to a specified class of purchasers during the base period. *One store is not considered as selling to the same specific class of purchasers as another and each store must determine a base price for each item it sells.*" (Emphasis added).

In our present case, we do not have two stores or two places of sales. All sales were made at the same location, the Blackhawk stadium.

We recognize that the Act gives the President broad powers and that the President by his executive orders has validly delegated broad powers to the Cost of Living Council to adopt appropriate regulations. See University of Southern California v. Cost of Living Council, 472 F.2d 1065 (Em.App.1972).

We are not here concerned with the power of the Cost of Living Council to adopt a regulation which would create a distinction between the sales of programs and other commodities at home games and at play-off games, but rather with the issue of whether the regulation adopted under the facts before us permits the consideration of the prices charged for programs at play-off games to establish base freeze price. Under the peculiar facts in this case, we give an affirmative answer and hold that the Government has not met the burden resting upon it to establish that purchasers of programs at regular home season games constitute a class separate and distinct from those persons who purchase programs at Stanley Cup play-off games.

The judgment appealed from is reversed and vacated and the temporary and permanent injunctions issued are dissolved.